# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **AMY BRANNON ROGERS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:16-CV-1807-MHH** |
| | } | |
| **NANCY A. BERRYHILL,** | } | |
| **Acting Commissioner of Social** | } | |
| **Security,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Pursuant to 42 U.S.C. § 405(g), plaintiff Amy Brannon Rogers seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Rogers's claims for a period of disability and disability insurance benefits. After careful review, the Court affirms the Commissioner's decision.[1]

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. (*See* https://www.ssa.gov/agency/commissioner.html). Therefore, the Court asks the Clerk to please substitute Ms. Berryhill for Carolyn W. Colvin as the defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

# I. PROCEDURAL HISTORY

Ms. Rogers applied for a period of disability and disability insurance benefits on July 29, 2013. (Doc. 9-4, p. 30). Ms. Rogers alleges that her disability began on November 19, 2011. (Doc. 9-4, p. 30). The Commissioner initially denied Ms. Rogers's claim on October 11, 2013. (Doc. 9-5, pp. 2-7). Ms. Rogers requested a hearing before an Administrative Law Judge (ALJ). (Doc. 9-5, p. 8). The ALJ issued an unfavorable decision on March 26, 2015. (Doc. 9-3, pp. 9-24). On September 8, 2016, the Appeals Council declined Ms. Rogers's request for review (Doc. 9-3, p. 2), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 405(g).

# II. STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d

1155, 1158 (11th Cir. 2004). In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.  SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past

relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Rogers has not engaged in substantial gainful activity since November 19, 2011, the alleged onset date. (Doc. 9-3, p. 14). The ALJ determined that Ms. Rogers suffers from the following severe impairments: left sciatic joint dysfunction, status post lumbar fusion L4-5 and L5-S1, lumbar degenerative disc disease, and obesity. (Doc. 9-3, p. 14). The ALJ found that Ms. Rogers has the following non-severe impairments: hypertension, hyperlipidemia, mild right carpel tunnel syndrome, depression, and anxiety. (Doc. 9-3, p. 15). Based on a review of the medical evidence, the ALJ concluded that Ms. Rogers does not have an impairment or a combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 9-3, p. 17).

In light of Ms. Rogers's impairments, the ALJ evaluated Ms. Rogers's residual functional capacity or RFC. The ALJ determined that Ms. Rogers has the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) except the claimant could lift and carry up to 20 pounds occasionally and 10 pounds frequently. She could sit, stand and/or walk for up to 6 hours each in an 8-hour workday with normal breaks. She could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She

could occasionally perform work activity requiring balancing, stooping, kneeling, crouching, and crawling.

(Doc. 9-3, p. 18).

Based on this RFC, the ALJ concluded that Ms. Rogers is not able to perform her past relevant work as a home attendant. (Doc. 9-3, p. 22). Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Ms. Rogers can perform, including an inspector, sorter, and bander. (Doc. 9-3, p. 23). Accordingly, the ALJ determined that Ms. Rogers has not been under a disability within the meaning of the Social Security Act. (Doc. 9-3, p. 24).

## IV. ANALYSIS

Ms. Rogers argues that she is entitled to relief from the ALJ's decision because the ALJ failed to properly consider the opinion of treating physician Dr. Franklin Calame Sammons and because the ALJ failed to consider her (Ms. Rogers's) work history in assessing her subjective pain testimony. The Court examines each issue in turn.

### A. Substantial Evidence Supports the ALJ's Decision to Give Little Weight to Dr. Sammons's Opinion.

An ALJ must give the opinion of a treating physician like Dr. Sammons "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered

by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41*; see also Crawford*, 363 F.3d at 1159 (noting a treating physician's report may be discounted if it is wholly conclusory or not supported by objective medical evidence). "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013) (citing *Lewis v. Callahan*, 125 F. 2d 1436, 1440 (11th Cir. 1997)).

On August 11, 2014, on Ms. Rogers's behalf, Dr. Sammons completed a disability report for the Retirement Systems of Alabama. (Doc. 9-10, pp. 4-5).[2] Dr. Sammons stated that he had treated Ms. Rogers since March 3, 2010. (Doc. 9-10, p. 4). According to Dr. Sammons, Ms. Rogers described her daily activities as "aid[e] type work, cleaning – pulling, housework, lifting patients, bathing patients." (Doc. 9-10, p. 4). Dr. Sammons stated that he believed that Ms. Rogers is permanently disabled. (Doc. 9-10, p. 4). When asked to list in detail the diagnoses and supporting evidence relating to Ms. Rogers's disability, Dr. Sammons stated that Ms. Rogers has SI instability and pain. (Doc. 9-10, p. 4). Dr.

---

[2] It appears that Dr. Sammons signed the disability report on August 1, 2014. (Doc. 9-10, p. 5). On the first page of the report, Dr. Sammons explains that he has treated Ms. Rogers from March 3, 2010 until August 11, 2014. (Doc. 9-10, p. 4). Dr. Sammons attached to the August 2014 disability report treatment notes from Ms. Rogers's August 11, 2014 office visit. (Doc. 9-10, p. 6). Therefore, the Court reasonably concludes that Dr. Sammons submitted the retirement systems disability report on August 11, 2014, not August 1, 2014 and that the August 1, 2014 signature date is a mistake.

Sammons also explained that Ms. Rogers cannot sit or stand for more than 30 minutes without changing positions. (Doc. 9-10, p. 4). When asked to list the objective findings that support his disability opinion, Dr. Sammons stated that Ms. Rogers needed an SI fusion, but insurance would not cover the minimally invasive procedure. (Doc. 9-10, p. 4). Dr. Sammons opined that Ms. Rogers cannot repetitively bend or stoop, that she needs frequent position changes, and that she cannot engage in prolonged walking, standing, sitting, or riding in a car. (Doc. 9-10, p. 5).

Dr. Sammons attached to his August 2014 disability report a treatment note from Ms. Rogers's office visit on August 11, 2014. (Doc. 9-10, p. 6). After examining Ms. Rogers on August 11, 2014, Dr. Sammons stated that he "d[id] not think [Ms. Rogers] can do her previous work and remains disabled from this permanently." (Doc. 9-10, p. 6). In the same treatment note, Dr. Sammons explained that Ms. Rogers "can't do prolonged driving or riding, standing or sitting. She cannot do repetitive bending, twisting or lifting great than 15-20 pounds max and not on any type of frequent basis." (Doc. 9-10, p. 6).

On February 11, 2015, Dr. Sammons completed on Ms. Rogers's behalf a physical medical source statement. (Doc. 9-9, pp. 112-114). Dr. Sammons opined that Ms. Rogers can occasionally lift or carry 10 pounds or less; frequently lift or carry less than 10 pounds; and walk for less than two hours in an 8-hour work day.

(Doc. 9-9, p. 112).  Dr. Sammons concluded that Ms. Rogers cannot sit or stand for periods of greater than 30 minutes without changing positions.  (Doc. 9-9, p. 113).  According to Dr. Sammons, Ms. Rogers often experiences pain and fatigue "severe enough to interfere with attention and concentration."  (Doc. 9-9, p. 113).  Dr. Sammons opined that Ms. Rogers would need to take three or four unscheduled breaks during an 8-hour work day.  (Doc. 9-9, p. 113).

Dr. Sammons stated that when sitting, Ms. Rogers should elevate her legs as needed for comfort.  (Doc. 9-9, p. 113).  Dr. Sammons found that Ms. Rogers's impairments likely will result in "good days" and "bad days" and that Ms. Rogers will miss work about three or four times a month.  (Doc. 9-9, p. 114).  Dr. Sammons stated that Ms. Rogers's condition had worsened since 2011.  (Doc. 9-9, p. 114).  When asked to describe the medical or clinical findings that supported his conclusions, Dr. Sammons stated that "[Ms. Rogers] now needs SI fusions."  (Doc. 9-9, p. 114).

The ALJ stated that the opinions contained in Dr. Sammons's August 11, 2014 disability report and his February 11, 2015 medical source statement "are not accorded controlling weight."  (Doc. 9-3, p. 21).  The ALJ explained:

> First, Dr. Sammons did not provide any clinical or objective findings to support his opinions.  On the contrary, the record does not contain diagnostic studies that reveal any findings consistent with an individual who is disabled, as defined (20 CFR 404[.]1505) from all employment.  Second, the claimant's treating history reveals she

8

underwent a lumbar fusion procedure in 2010, was released in October 2011 (Ex B3F) and did so well afterward that she did not return for additional treatment with Dr. Sammons for about two years, which is well after the alleged onset date. Third, as discussed, the evidence from Dr. Sammons shows the claimant's pain symptoms worsened from July 2013 through December 2013; however, Dr. Sammons['s] treatment, consisting of SI injections, significantly improved her conditions. Fourth, records from the claimant's treating physician reveal no complaints involving her back condition and Dr. Lockhard's examinations fail to show any significant findings. In fact, as discussed, Dr. Lockhard's August 2014 examination revealed a normal gait and the claimant had no signs of musculoskeletal problems. . . . Consequently, Dr. Sammons['s] opinions are inconsistent with the other evidence in the record and are not accorded with controlling weight.

(Doc. 9-3, p. 21).

With respect to Dr. Sammons's August 11, 2014 disability opinion and recommended restrictions, the ALJ credited Dr. Sammons's assessment to the extent he opined that Ms. Rogers cannot perform her past work as a home aide. (Doc. 9-3, p. 21; *see* Doc. 9-10, pp. 4-6). The ALJ gave "little weight" to Dr. Sammons's August 11, 2014 functional assessments because according to the ALJ, the assessments "are inconsistent with the treating records." (Doc. 9-3, pp. 21-22).

Limited treatment records support Dr. Sammons's opinions. Dr. Sammons began treating Ms. Rogers in 2010. In March 2010, Dr. Sammons and another physician performed a lumbar fusion on Ms. Rogers at L4-5 and L5-S1. (Doc. 9-8, pp. 21-28). Ms. Rogers saw Dr. Sammons for a number of follow-up visits after her surgery. (Doc. 9-9, pp. 5-13). On October 5, 2011, Dr. Sammons stated that

Ms. Rogers was "doing okay" and that she had "good days and bad days." (Doc. 9-9, p. 6). Dr. Sammons released Ms. Rogers from care and explained that she could return on an as-needed basis "if her symptoms change[d] or worsen[ed]." (Doc. 9-9, p. 6). Ms. Rogers did not see Dr. Sammons again until July 11, 2013, 20 months after Ms. Rogers's alleged onset date. (Doc. 9-9, p. 3).

On July 11, 2013, Ms. Rogers stated that she "ha[d] been doing okay but ha[d] been getting some increasing problems." (Doc. 9-9, p. 3). She explained that she had been experiencing left hip pain "off and on for months." (Doc. 9-9, p. 3). Ms. Rogers told Dr. Sammons that "sitting, standing, flexing, lifting, riding in a car, or [walking] stairs" aggravated the pain. (Doc. 9-9, p. 3). Ms. Rogers complained that her pain was "becoming more of a nuisance." (Doc. 9-9, p. 3). During a physical examination, Ms. Rogers had "discomfort to palpation across the lumbosacral region" and "mild pain with flexion past 60 degrees." (Doc. 9-9, p. 3). Ms. Rogers was positive for SI thrust pain and she had "mildly positive SI distraction pain." (Doc. 9-9, p. 3). Dr. Sammons diagnosed left SI dysfunction. (Doc. 9-9, p. 3).

On August 14, 2013, Ms. Rogers told Dr. Sammons that an anti-inflammatory did not provide much improvement in her pain across the left SI region. (Doc. 9-9, p. 2). Ms. Rogers had four positive SI tests, and she had a positive Farber's test. Ms. Rogers also had a positive SI thrust, axial lateral

compression, and Gaenslen test. (Doc. 9-9, p. 2). Dr. Sammons recommended an SI injection, and Ms. Rogers stated that she would consider the procedure. (Doc. 9-9, p. 2).

During an examination on August 11, 2014, Dr. Sammons noted that while Ms. Rogers was in the clinic, Ms. Rogers "constantly had to shift" from side to side; she walked with an antalgic gait; she had decreased range of motion in flexion and extension of the lumbar spine; she had a positive Faber's test on the left, positive SI distraction, positive Gaenslen, and a positive Patrick's figure of four test. (Doc. 9-9, p. 51). Dr. Sammons diagnosed SI instability on the left side with chronic back and hip pain. (Doc. 9-9, p. 51).

Medical evidence in the administrative record is inconsistent with Dr. Sammons's opinion regarding the limiting effects of Ms. Rogers's physical impairments. For example, during her visit with Dr. Sammons on July 11, 2013, Dr. Sammons noted that Ms. Rogers's increased pain with extension was "not severe," and Ms. Rogers had intact sensation, full and unrestricted range of motion in her hips, and a normal heel and toe walk. (Doc. 9-9, p. 3). Dr. Sammons administered an SI injection on September 16, 2013. (Doc. 9-9, pp. 49-50). After the injection, Ms. Rogers "saw significant improvement of her pain." (Doc. 9-9, p. 48). Ms. Rogers's pain flared up two or three weeks after the injection when "she did some significant extra work," but even still, Ms. Rogers rated her pain as two

or three on a 10-point scale. (Doc. 9-9, p. 48). Dr. Sammons recommended six weeks of SI stabilization exercises through physical therapy. (Doc. 9-9, p. 48).

On November 13, 2013, Ms. Rogers saw Dr. Sammons again, and Ms. Rogers stated that the physical therapy "helped temporarily," but she still was experiencing pain. (Doc. 9-9, p. 76). Ms. Rogers had a positive SI thrust, positive SI distraction, and positive Gaenslen test. (Doc. 9-9, p. 76). Dr. Sammons recommended another injection which Ms. Rogers received in December 2013. (Doc. 9-9, p. 75). Ms. Rogers told Dr. Sammons that the December 2013 injection "worked better" than the September 2013 injection. (Doc. 9-9, p. 75). During a December 30, 2013 office visit, Dr. Sammons noted that Ms. Rogers "still ha[d] a little discomfort but mostly if she s[at] too long but overall she is much better than she was." (Doc. 9-9, p. 75). Dr. Sammons stated that if Ms. Rogers continued to have problems, then he would recommend that Ms. Rogers possibly consider an SI fusion. Dr. Sammons did not schedule a follow-up appointment, but he instructed Ms. Rogers to return if her symptoms changed or worsened. (Doc. 9-9, p. 75).

Dr. Sammons's opinions also are inconsistent with treatment notes from Ms. Rogers's primary care physician, Dr. Thomas Lockhard. The ALJ explained that Dr. Lockhard's treatment notes did not reveal significant findings with respect to Ms. Rogers's back. (Doc. 9-3, p. 21; *see* Doc. 9-9, pp. 37-41, 66-68, 101-110). When Ms. Rogers saw Dr. Lockhard on August 20, 2014, nine days after Dr.

Sammons issued his August 11, 2014 opinion, Ms. Rogers denied musculoskeletal pain or swelling. Ms. Rogers had a normal gait, and her extremities appeared normal. She had no localized tenderness or swelling in her joints. (Doc. 9-9, p. 67). On February 5, 2015, six days before Dr. Sammons issued his February 11, 2015 opinion, Dr. Lockhard's records state that Ms. Rogers was "doing okay." (Doc. 9-9, p. 101). Ms. Rogers "denie[d] acute problems" and was "informed about her chronic back pain." (Doc. 9-9, p. 101). Ms. Rogers denied joint pain, joint swelling, muscle pain, and muscle weakness. A musculoskeletal examination was normal. (Doc. 9-9, p. 102). The ALJ recognized that Dr. Lockhard did not treat Ms. Rogers's back condition (Doc. 9-3, p. 21; *see* Doc. 9-9, p. 101), but the ALJ explained:

> [I]t is reasonable to conclude that he would have documented episodes of extreme distress, observations showing the claimant was ambulating with a medically necessary hand-held assistive device, and any severe pain behaviors. Yet, his treating records do not contain any objective signs of distress or any significant examination findings.

(Doc. 9-3, p. 21).

The Court finds that substantial evidence supports the ALJ's decision to give little weight to Dr. Sammons's opinions. *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) ("The ALJ found [the treating physician's] opinion inconsistent with the medical records and other evidence, and gave it less weight on that basis. Because the ALJ's rationale was adequate, we will not disturb the

credibility determination."); *Crawford*, 363 F.3d at 1159-61 (finding that substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where those physicians' opinions regarding the claimant's disability were inconsistent with the physicians' treatment notes and unsupported by the medical evidence); *Roth v. Astrue*, 249 Fed. Appx. 167, 168 (11th Cir. 2007) (finding that substantial evidence supported the ALJ's determination that the treating physician's opinion "should not be assigned substantial weight because it was inconsistent with the record as a whole and not supported by the doctor's own medical records.").

Based on the applicable legal standard, the Court must accept the weight that the ALJ assigned to Dr. Sammons's assessments, even though, as Mr. Rogers points out (*see* Doc. 11, pp. 14-16), there is evidence in the record that supports those assessments. *See Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830, 833 (11th Cir. 2011) ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence.").

The Court is not persuaded by Ms. Rogers's contention that the ALJ should have acknowledged Dr. Sammons's orthopedic specialty and treating relationship with Ms. Rogers. (Doc. 11, pp. 10-11). The ALJ stated that Dr. Sammons was Ms. Rogers's "orthopedic specialist," and although the ALJ did not explicitly state

that Dr. Sammons was a treating physician, the ALJ's thorough review of Dr. Sammons's treatment notes demonstrates that the ALJ considered Dr. Sammons a treating source. (*See* Doc. 9-3, pp. 19-21). In fact, the ALJ stated that in examining the opinion evidence, she "must consider the examining relationship, treating relationship, supportability, consistency, specialization, and other factors that tend to support or contradict opinion evidence." (Doc. 9-3, p. 21). Although an ALJ must consider opinions consistent with the factors listed in 20 C.F.R § 404.1527(c), an ALJ "is not required to explicitly address each of those factors." *Lawton*, 431 Fed. Appx. at 833. Instead, an ALJ "must provide 'good cause' for rejecting a treating physician's medical opinions." *Lawton*, 431 Fed. Appx. at 833. As explained above, the ALJ provided good cause for giving little weight to Dr. Sammons's opinions.

The Court also is not persuaded by Ms. Rogers's argument that the ALJ substituted her "lay opinion" for that of a medical provider. (Doc. 11, pp. 11-12). Ms. Rogers contends that if the ALJ had a reasonable basis to question Dr. Sammons's opinions, then the ALJ should have arranged for a consultative examination, asked a non-examining consultant to review the file, solicited testimony from a medical expert, or re-contacted Dr. Sammons. (Doc. 11, p. 13). The Court disagrees.

"[T]he task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 Fed. Appx. 993, 999 (11th Cir. 2010). The ALJ makes an RFC determination "based on all relevant medical and other evidence[] of a claimant's remaining ability to work despite h[er] impairment." *Castle v. Colvin*, 557 Fed. Appx. 849, 852 (11th Cir. 2014) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *see also Green v. Soc. Sec. Admin.*, 223 Fed. Appx. 915, 923 (11th Cir. 2007) ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented. . . .").

Ms. Rogers does not cite, and the Court has not located, binding authority requiring an ALJ to obtain additional opinion evidence or re-contact a treating source when the ALJ discredits a treating physician's opinion. As explained above, the ALJ articulated good cause for rejecting Dr. Sammons's opinion, and substantial evidence in the record supports the ALJ's RFC determination. In *Green v. Social Security Administration*, in an unpublished opinion, the Eleventh Circuit examined a similar factual scenario. 223 Fed. Appx. 915 (11th Cir. 2007). The claimant in *Green* argued that after the ALJ "decided to discredit [the treating physician's] evaluation, the record lacked substantial evidence to support" the ALJ's RFC determination. *Green*, 223 Fed. Appx. at 923. It was true that the

treating physician's opinion and the claimant's testimony contradicted the ALJ's RFC evaluation. *Green*, 223 Fed. Appx. at 923. But the ALJ's decision to discredit the treating physician's opinion did not deprive the ALJ of a basis for assessing the applicant's RFC:

> Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work. The ALJ did not substitute his judgment for that of Dr. Bryant; rather, he determined that Dr. Bryant's opinion was inconsistent with objective medical evidence in the record.

*Green*, 223 Fed. Appx. at 923-24. The same rationale applies here, and the Court finds that substantial evidence supports the ALJ's RFC.

## B. The ALJ properly evaluated Ms. Rogers's subjective complaints of pain.

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Commissioner of Social Sec.*, 600 Fed. Appx. 650, 656 (11th Cir. (2015) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per

curiam)). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). If the ALJ discredits a claimant's subjective testimony, then the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225; *see* SSR 96-7P, 1996 WL 374186 at *2 ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

In this case, the ALJ found that Ms. Rogers's medically determinable impairments reasonably could cause some of her alleged symptoms, but the ALJ determined that Ms. Rogers's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Doc. 9-3, p. 19).[3]

---

[3] On March 28, 2016, SSR 16-3p superseded SSR 96-7p, the previous ruling concerning subjective complaints about pain. 2016 WL 1237954 at *1. SSR 16-3p "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, 2016 WL 1119029 at *1. SSR-16-3p eliminates the term "credibility" from Social Security Administration policy and stresses that when evaluating a claimant's symptoms, an ALJ must "not assess an individual's overall character or truthfulness" but instead must "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms." SSR 16-3p, 2016 WL 1119029 at *1, *10. Ms. Rogers has not argued that SSR 16-3p applies to her case, and the Eleventh Circuit has held that SSR 16-3p does not apply retroactively to administrative decisions issued before March 28, 2016. *See Hargress v. Soc. Sec. Admin., Comm'r*, --- F.3d ----, 2018 WL 1061567, *5 (11th Cir. Feb. 27, 2018). Thus, the Court finds that SSR 16-3p does not apply to the ALJ's March 26, 2015 decision.

The ALJ articulated several specific reasons for rejecting Ms. Rogers's subjective pain testimony. (Doc. 9-3, pp. 19-22). First, the ALJ found that "the objective record does not support" Ms. Rogers's allegations. (Doc. 9-3, p. 19). For example, the ALJ explained that although Ms. Rogers alleged disability beginning in November 2011, Ms. Rogers did not seek treatment from Dr. Sammons, her orthopedic specialist, until July 2013, approximately 20 months after the alleged onset date. (Doc. 9-3, p. 19). The ALJ noted that Ms. Rogers generally managed her back pain with injection therapy. (Doc. 9-3, p. 19; *see* Doc. 9-9, pp. 52, 54). After reporting that "she [was] much better" following a December 2013 injection, Dr. Sammons instructed Ms. Rogers to contact him if her symptoms changed or worsened. (Doc. 9-3, p. 19; *see* Doc. 9-9, p. 52). Ms. Rogers did not seek follow-up treatment from Dr. Sammons until seven months later, in August 2014. (Doc. 9-3, p. 19; *see* Doc. 9-9, pp. 51-52). In addition, treatment notes from Ms. Rogers's primary care physician, Dr. Lockhard, contain no significant findings regarding her musculoskeletal system, and during visits with Dr. Lockhard, Ms. Rogers denied joint and muscle pain. (Doc. 9-3, p. 20; *see* Doc. 9-9, pp. 37-38, 63-64, 66-67).

---

Because SSR 16-3p does not apply retroactively (*see* note 4, above), the ALJ's use of the term credible is not error.

The ALJ noted that during an in-person interview, a Social Security Administration employee observed that Ms. Rogers had no difficulty standing, sitting, or walking. (Doc. 9-3, p. 22; *see* Doc. 9-7, pp. 2-4). The ALJ found "the lack of observable difficulties is inconsistent with [Ms. Rogers's] disabling allegations." (Doc. 9-3, p. 22).

Ms. Rogers does not challenge the reasons that the ALJ provided for rejecting her subjective complaints of pain, and the Court finds that substantial evidence supports the ALJ's assessment. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("The ALJ discredited [the claimant's] testimony by explaining that [the claimant's] pain had not require[d] routine or consistent treatment, and he often went for months or years between complaining of this pain to his physicians."); *Cyburn v. Comm'r of Soc. Sec.*, 555 Fed. Appx. 892, 894 (11th Cir. 2014) (substantial evidence supported the ALJ's credibility determination because the ALJ "specifically and adequately articulated his reasons for the adverse credibility determination" by pointing to inconsistencies between the claimant's testimony and the evidence of the record) (per curiam). Instead, Ms. Rogers argues that it was reversible error for the ALJ to fail to consider her strong work history when assessing her subjective pain testimony. (Doc. 11, pp. 16-20). Ms. Rogers cites no binding authority to support her position, and the Court is not persuaded by her argument.

In assessing a claimant's subjective complaints of pain, the regulations require an ALJ to "consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by medical sources, and observations by our employees and other persons." 20 C.F.R. § 404.1529(c); *see* SSR 96-7p, 1996 WL 374186, at *5 (An ALJ should assess a claimant's subjective pain testimony based on a variety of factors including "[s]tatements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.").

Here, the ALJ did not specifically examine Ms. Rogers's strong work history in her evaluation of Ms. Rogers's subjective pain testimony; however, the ALJ unequivocally stated that in making her findings regarding Ms. Rogers's subjective complaints of pain, "the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based upon the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (Doc. 9-3, pp. 17-18). The ALJ also explained that when a claimant's statements about her pain "are not substantiated by objective medical evidence, the undersigned must make a finding on the

credibility of the statements based on a consideration of the entire case record." (Doc. 9-3, p. 18). The ALJ stated that she reviewed Ms. Rogers's "allegations and testimony, forms completed at the request of Social Security, . . . and other relevant evidence" in finding that Ms. Rogers is capable of performing light work. (Doc. 9-3, p. 22). These statements from the ALJ suggest that the ALJ considered Ms. Rogers's hearing testimony regarding her work history, including the length of her employment and Ms. Rogers's reason for leaving her job. (Doc. 9-3, pp. 35-36). The ALJ's statements also indicate that the ALJ considered Ms. Rogers's function report in which she stated that "I have always worked even when I was dealing [with] pain. . . . I [was] never laid [off] of work. I went beyond what was expected of me." (Doc. 9-7, p. 33).

Ms. Rogers's contention that "fundamental fairness" required the ALJ to explicitly consider Ms. Rogers's work history in an assessment of her subjective pain testimony (Doc. 11, pp. 19-20) does not find support in precedent that is binding on this Court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam) ("[A]n adequate credibility finding need not cite particular phrases or formulations.") (internal quotation marks and citation omitted); *see also Dyer*, 395 F.3d at 1211 ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.") (per curiam); *Castel v. Comm'r of Soc. Sec.*, 355 Fed. Appx. 260, 265 (11th Cir. 2009) ("ALJ is not required to explicitly

22

conduct credibility analysis, but the reasons for finding a lack of credibility must be clear enough that they are obvious to a reviewing court.") (citing *Foote*, 57 F.3d at 1561-62).

Also contrary to Ms. Rogers's position, the Court has not located authority for the proposition that a claimant's strong work history precludes a negative credibility determination. The Eleventh Circuit Court of Appeals's decision in *Edwards v. Sullivan*, 937 F.3d 580 (11th Cir. 1991) suggests that the opposite is true. The claimant in *Edwards* argued that "the ALJ should have accepted her testimony about her pain because she had a good work history." *Edwards*, 937 F.3d at 584. The Eleventh Circuit rejected the claimant's argument because the Court found that substantial evidence supported the ALJ's conclusion that the claimant had not met "either of the two conditions that would satisfy the second part of the [Eleventh Circuit pain standard] test." *Edwards*, 937 F.3d at 584. Therefore, the Eleventh Circuit concluded that the ALJ was "not required to grant [the claimant] benefits based on her complaints of pain." *Edwards*, 937 F.3d at 584.

Substantial evidence supports the ALJ's conclusion regarding Ms. Rogers's subjective complaints of pain, and the ALJ did not commit reversible error by failing to specifically consider Ms. Rogers's strong work history as part of her analysis.

## V.    CONCLUSION

For the reasons discussed above, the Court finds that substantial evidence supports the ALJ's decision, and the ALJ applied proper legal standards.   The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.   Accordingly, the Court affirms the Commissioner's decision.   The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 8, 2018.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE